IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 29, 2023

## HUMBERTO PAULINO GOMEZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 20CR09  Alex E. Pearson, Judge**

_____

### No. E2022-00661-CCA-R3-PC

_____

The petitioner, Humberto Paulino Gomez, appeals the denial of his petition for post-conviction relief, which petition challenged his 2020 Greene County Criminal Court guilty-pleaded convictions of second degree murder and attempted second degree murder, for which he received an effective 20-year sentence.  On appeal, the petitioner argues that he was deprived of the effective assistance of counsel and that his plea was not knowingly and voluntarily entered.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JILL BARTEE AYERS, J., joined.

T. Hunter Shelton, Greeneville, Tennessee, for the appellant, Humberto Paulino Gomez.

Jonathan Skrmetti, Attorney General and Reporter; Katharine K. Decker, Senior Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Ritchie D. Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Greene County Grand Jury returned an indictment charging the petitioner with first degree premeditated murder of his wife, Beatrix Flores, and attempted first degree murder of his brother-in-law, Gustavo Flores.  On March 26, 2019, the petitioner entered

an *Alford*[1] plea to second degree murder and attempted second degree murder, for which he received concurrent sentences of 20 years and 12 years, respectively.

According to the State's recitation of facts at the plea hearing, on May 12, 2018, Mr. Flores attempted to enter the residence that the petitioner and Ms. Flores shared through an open door when he was met by the petitioner, who had a shotgun. The petitioner pointed the shotgun at Mr. Flores and asked, "Where were you?" The petitioner then stated that he was going to kill Mr. Flores. Mr. Flores ran from the petitioner as the petitioner fired the shotgun at him.

On May 12 at 10:43 p.m., Greene County Sheriff's Deputy Joseph McNulty responded to the petitioner's address due to a report of domestic assault with shots fired. He saw Mr. Flores outside the home, temporarily placed Mr. Flores in the patrol car, and entered the home. He did not find anyone inside the home but observed a large amount of blood. Deputy McNulty subsequently found Ms. Flores lying in the yard with serious injuries. Officers learned that the petitioner had argued with Ms. Flores earlier, but the officers were unable to locate the petitioner. It was determined that Ms. Flores had been struck with a blunt object, resulting in trauma to her head, a brain bleed, skull fractures, and bruising to her torso and extremities. Officers recovered a bat with blood on it in the bedroom and determined that the petitioner inflicted the injuries to Ms. Flores, resulting in her death. Two days later, on May 14, 2018, officers located the petitioner in Anson County, North Carolina.

At the plea submission hearing, the trial court questioned the defendant through an interpreter, and the 53-year-old petitioner testified that he had attended school for approximately three weeks, was able to read and write in Spanish "[a] little bit," and was unable to read and write in English. The trial court reviewed the indicted charges and the provisions of the plea agreement, including the charges for which the petitioner was entering an *Alford* plea and his sentences. The petitioner affirmed that he understood the indicted charges, the offenses for which he was entering a plea, and the sentences. He also affirmed that trial counsel reviewed the elements of the offenses with him and that he was satisfied with trial counsel's representation. The petitioner acknowledged that the State's recitation of the facts was a fair statement of the proof that the State would have presented at trial, that there was a good probability that he would have been convicted of the offenses at trial, and that it was in his best interest to enter the plea. The trial court expressed a litany of the various rights that the petitioner would be waiving upon the submitted plea,

---

[1] In *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), the United States Supreme Court held that a criminal defendant may enter a guilty plea without admitting guilt if the defendant intelligently concludes that his best interests would be served by a plea of guilty.

and the petitioner acknowledged that he understood his rights and was waiving his rights freely and voluntarily. The trial court accepted the plea and sentenced the petitioner.

On January 27, 2020, the petitioner filed a pro se petition for post-conviction relief. Although the petitioner listed only his conviction for attempted second degree murder, he included arguments in his petition challenging both of his convictions. In his petition, he maintained that Mr. Flores had killed two cows belonging to the petitioner's boss and had molested the petitioner's daughter; that Mr. Flores came to the petitioner's home on the day of the offenses; that the petitioner "seemed to have blacked out" and grabbed his shotgun "in a fit of rage"; that the petitioner pushed Ms. Flores when she attempted to intervene; that Ms. Flores fell, hit her head, and passed away "a few days later"; and that the petitioner chased Mr. Flores out of the home and fired a shotgun up into the air. The petitioner asserted that trial counsel was ineffective in failing to thoroughly investigate the case and advise him regarding the elements of the offenses and the lesser included offenses. The petitioner also asserted that his plea was not knowingly, intelligently, and voluntarily entered.

During the course of the proceedings, the post-conviction court appointed multiple attorneys to represent the petitioner, allowed the attorneys to withdraw, and appointed replacement counsel. The post-conviction court also granted multiple requests for continuances to allow counsel the opportunity to file an amended petition. An amended petition is not included in the appellate record, and the record includes no indication that an amended petition was filed.

An evidentiary hearing was held on April 14, 2022, during which only trial counsel testified. Trial counsel, an assistant public defender, testified that his office received the trial court's order of appointment on July 30, 2018. He stated that his office had represented the petitioner in general sessions court and that, therefore, he was familiar with the petitioner prior to receiving the order of appointment. Trial counsel began investigating the case prior to his appointment, and he received discovery from the State prior to filing any pretrial motions.

Trial counsel testified that he met with the petitioner on multiple occasions with the assistance of an interpreter, and trial counsel reviewed the discovery with the petitioner. He stated that he explained the elements of first degree murder, as well as the elements of the lesser included offenses, to the petitioner. Trial counsel said that although he was generally "very technical" in his explanation of the elements of the offenses, he was "more colloquial" in his explanation to the petitioner due to "the language issue."

Trial counsel testified that he was assisted by an investigator with 27 years of experience. Trial counsel and the investigator went to the crime scene on two different

occasions, and they interviewed one of the petitioner's co-workers. Trial counsel recalled that he and the petitioner discussed the allegations against Mr. Flores, and trial counsel believed that using the allegations in the defense would be difficult because the allegations did not result in formal charges against Mr. Flores and the allegations were "very attenuated" from the events resulting in the petitioner's charges. Trial counsel noted that Mr. Flores did not enter the petitioner's home on the night of the offenses and did not argue with or threaten the petitioner. Rather, the petitioner "just knew that he was outside and was not happy about it." Trial counsel testified that he was "concerned" whether the presence of Mr. Flores outside the home "would meet the threshold for adequate provocation."

Trial counsel noted that the petitioner and Ms. Flores argued prior to her death because she planned to go dancing that night and the petitioner did not want her to go. Trial counsel asked the petitioner multiple times whether he believed Ms. Flores was having an affair, and the petitioner insisted that he had no concerns about infidelity. Trial counsel stated that the physical evidence did not corroborate the petitioner's version of the events. Trial counsel testified that although there was some discussion about the petitioner's "losing time," the petitioner was able to recall the struggle with Ms. Flores and the specific facts, and trial counsel was "under the impression" that the petitioner recalled "most . . . of what happened." Trial counsel did not request that the petitioner undergo a mental health evaluation, explaining that the petitioner never indicated that he failed to understand the roles of the participants at trial or that he was hallucinating or experiencing delusions on the night of the offenses.

Trial counsel testified that he did not recall the petitioner's saying that he wanted a trial. Trial counsel stated that had the petitioner requested a trial, trial counsel would have stopped discussing a possible plea and would have continued preparing for a trial. Trial counsel recalled that the petitioner was concerned primarily about returning to Mexico as quickly as possible to be with his children. Thus, the petitioner directed trial counsel to negotiate a plea agreement with the State.

Trial counsel testified that he reviewed the terms of the plea agreement with the petitioner through an interpreter. Trial counsel stated that he met with the petitioner multiple times to ensure that the petitioner understood the offenses to which he was pleading, the rights that he was waiving, and the sentence that he was to receive. Trial counsel's office utilized an internal form called a "Plea Agreement Understanding Form," which notified the client of the charges, the possible sentence, and the plea offer. The form was translated to the petitioner by an interpreter, and the petitioner signed the document stating that he was knowingly and voluntarily accepting the plea offer and waiving his right to a jury trial. The paperwork that included the terms of the plea agreement and the petitioner's acceptance of the agreement were written in both English and Spanish, and the

petitioner signed both forms. Trial counsel stated that based upon his observations, the petitioner understood both forms, and trial counsel said he would not have allowed the petitioner to enter the plea had trial counsel believed otherwise. An interpreter was present during the plea submission hearing, and trial counsel did not recall the petitioner's expressing any hesitancy.

During cross-examination, trial counsel, who had been a licensed attorney since October 2013, testified that he attempted to locate witnesses whom the petitioner requested that he interview. The petitioner, however, was able to only provide first names of the witnesses and could not provide the witnesses' addresses, and, as a result, trial counsel and the investigator were unable to locate the witnesses. Trial counsel stated that based on the petitioner's version of the events, trial counsel expected to find blood on the mantel inside the petitioner's house. However, there were no photographs showing blood on the mantel, and there was no blood in areas where trial counsel was "told [he] would find it." Rather, there was "[a] good portion" of blood in the bedroom between the bed and the wall, and there was evidence that someone had attempted to clean up the blood with paper towels.

Trial counsel testified that he believed the petitioner understood the difficulties of his case and the evidence that the State could use to prove its case against him. The petitioner told trial counsel on multiple occasions that he wished to return to Mexico. Trial counsel explained to the petitioner that he likely would be required to serve his sentence and then be deported to Mexico. Trial counsel stated that the petitioner had issues with the charge involving Mr. Flores, and trial counsel had hoped to convince the State to reduce the charge to aggravated assault because he believed "that more closely fit. But the State doesn't always have to agree to my counteroffers." Trial counsel noted that the charge of first degree murder of Ms. Flores was the more serious charge, and he explained to the petitioner that although the petitioner may not have liked the plea agreement as it related to the charge involving Mr. Flores, his sentence for the offense would run concurrently with his sentence for the conviction of second degree murder of Ms. Flores. Trial counsel stated that he also explained to the petitioner "ad nauseam" that he would be required to serve the 20-year sentence at 100 percent but that he could receive "good time credit" reducing the service of his sentence in confinement to 85 percent if he "behaved in prison." Trial counsel did not believe the petitioner lacked any understanding about the terms of the plea agreement.

At the conclusion of the hearing, the post-conviction court made oral findings denying the petitioner's request for post-conviction relief. The court found that the petitioner failed to produce any evidence that his guilty plea was unlawfully induced or unknowingly or involuntarily entered or that trial counsel was ineffective. The court noted that trial counsel testified that he investigated the facts of the case, utilized an interpreter,

met with the petitioner many times, and "attempted to verify things that [the petitioner] told him that might be favorable to him, and that didn't even check out." The court found that trial counsel thoroughly investigated and prepared the case, negotiated and secured a plea agreement, explained the plea agreement to the petitioner through an interpreter, and presented and reviewed the plea agreement acceptance forms written in English and Spanish to the petitioner, who signed both forms. The court found that the petitioner knowingly and voluntarily entered the plea and received effective assistance of counsel. The court subsequently entered an order dismissing the petitioner's post-conviction petition.

On May 24, 2022, this court entered an order granting the petitioner's motion to accept a late-filed notice of appeal. On appeal, the petitioner states that he "seeks post-conviction relief concerning his plea pertaining to the attempted second-degree murder." He argues that trial counsel was ineffective and that his plea was not knowingly and voluntarily entered. He maintains that because he speaks "little to no English," he had difficulty understanding trial counsel; that trial counsel was ineffective in communicating the law and consequences of the plea; that because the petitioner wanted to return to Mexico as soon as possible, "the plea was made in haste and without a full explanation of the law, the elements, lesser included offenses, and corresponding parole eligibility and release dates"; and that due to "the language barrier" and his "barely being able to read and write," he did not knowingly and intelligently enter the plea.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id*. § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,…that course should be followed." *Strickland*, 466 U.S. at 697.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (alteration in original) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Wilson*, 31 S.W.3d at 195 (alterations in original) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Trial counsel testified that he met with the petitioner on numerous occasions and utilized an interpreter during each meeting. Trial counsel reviewed the discovery received from the State with the petitioner, utilized the services of an investigator, visited the crime scene, and attempted to locate witnesses identified by the petitioner. Trial counsel stated that he reviewed the elements of the charged offenses and the lesser included offenses with the petitioner. Trial counsel testified that the petitioner's version of the events was not consistent with the physical evidence, and trial counsel did not believe that the proof established adequate provocation by either of the victims. The petitioner expressed his desire to return to Mexico as quickly as possible to be with his children, and he authorized trial counsel to negotiate a plea agreement with the State.

Trial counsel was able to secure an agreement whereby the petitioner would enter an *Alford* plea to reduced charges of second degree murder and attempted second degree murder. Trial counsel testified that he met with the petitioner on multiple occasions during which trial counsel explained through an interpreter the terms of the plea agreement, the rights that the petitioner would be waiving by entering the plea, the sentence, and the effect of any "good time credits" on the petitioner's release eligibility. Trial counsel

provided the petitioner with the plea and waiver of rights form written in both English and Spanish, and trial counsel, through an interpreter, reviewed the forms with the petitioner, who signed both forms. Trial counsel believed the petitioner understood the terms of the plea agreement. During the plea hearing, the petitioner affirmed that he understood the terms of the plea agreement and that he was waiving his rights and entering the plea freely and voluntarily. The post-conviction court credited trial counsel's testimony and found that trial counsel conducted a thorough investigation, explained the terms of the plea agreement to the petitioner through an interpreter, and reviewed the plea acceptance forms with the petitioner and that the petitioner entered the plea knowingly and voluntarily. We conclude that trial counsel's performance was not deficient and that the petitioner knowingly and voluntarily entered the plea agreement. Accordingly, the petitioner is not entitled to relief.

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE